## MERCHANTS' NAT. BANK OF DAYTON, OHIO, v. YANCEY COUNTY.

(District Court, W. D. North Carolina, at Asheville. February 1, 1921.)

1. **Highways ⬪⟩122—Statute as to special road tax repealed by implication by later statute.**

   Acts N. C. 1913, c. 603, creating the board of road commissioners of Yancey county, to be a body corporate to have general authority over all the roads in the county, with power to construct and maintain roads, make contracts, and issue bonds to the amount of $150,000, *held* to repeal Acts N. C. 1907, c. 193, requiring the commissioners of Yancey county to levy a special tax annually, to be set apart as a special road fund.

2. **Highways ⬪⟩91—County not liable for indebtedness of abolished road board in excess of statutory limit.**

   Under Acts N. C. 1913, c. 603, creating a board of road commissioners of Yancey county, to have full charge of construction of all roads in the county, with authority to borrow money and issue bonds not to exceed $150,000, in amount, which act was repealed and the board abolished by Acts N. C. 1917, c. 113, the county of Yancey *held* not liable for indebtedness created by the board during its existence in excess of $150,000.

⬪⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Highways ⬤╼91—Duty of county to apply fund pro rata on claims against abolished board.**

Where the board of road commissioners of a county, which was a separate corporation, advanced money for the use of the county as a temporary loan, on the abolition of such board leaving unpaid obligations it was the duty of the county commissioners to apply the money due the board pro rata on all claims against it of which the commissioners had notice.

**4. Highways ⬤╼91—Under statute validating indebtedness county held liable for indebtedness of abolished road board; "necessary expenses."**

Under Act N. C. Aug. 26, 1920, c. 3, which, as amended by Act Jan. 14, 1921, provides that "all indebtedness now outstanding incurred by a county or municipality for necessary expenses is hereby validated," Yancey county *held* liable for an indebtedness incurred by its board of road commissioners, subsequently abolished, for labor and materials used in construction of public roads of the county, which under the decisions of the Supreme Court of the state was a necessary county expense.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessary Expenses.]

In Equity. Suit by the Merchants' National Bank of Dayton, Ohio, against Yancey County, N. C. Decree for complainant.

Merrimon, Adams & Johnston, of Asheville, N. C., for plaintiff.
Hudgins, Watson & Watson, of Burnsville, N. C, for defendant.

WEBB, District Judge. This suit in equity was brought by the complainant, the Merchants' National Bank, of Dayton, Ohio, against Yancey County, N. C., for the recovery of two certain sums, to wit:

(1) The sum of $3,400, evidenced by a warrant or voucher dated October 26, 1916, bearing interest 12 months from date at the rate of 6 per cent. per annum, said voucher being in words and figures as follows:

$3,400.00.                                                                      No. 1281.
                                              Burnsville, N. C., October 26th, 1916.
The treasurer of the board of road commissioners of Yancey county will pay to the order of the bearer thirty-four hundred dollars, payable twelve months after date at the Hanover National Bank, for New York, N. Y., with interest at 6% per annum.
Done by order of the board on 26th day of October, 1916.
                                                        W. B. Wray, Chairman.
Countersigned by J. D. Hughes, Secretary.

(2) The sum of $3,819.24, evidenced by warrant or voucher dated December 6, 1916, bearing interest 12 months from date at the rate of 6 per cent. per annum, which voucher is in words and figures as follows:

$3,819.24.                                                                     No. 1301.
                                              Burnsville, N. C., December 6th, 1916.
The treasurer of the board of road commissioners of Yancey county will pay to the order of the bearer, twelve months after date, three thousand eight hundred nineteen and 24/100 dollars, payable at Hanover National Bank, New York, N. Y., with interest at 6% per annum.
Done by order of the board on 6th day of December, 1916.
                                                        W. B. Wray, Chairman.
Countersigned by J. D. Hughes, B20204
                          Secretary.

---

These warrants or vouchers were purchased or acquired by the complainant in this cause, and the complainant now contends that the defendant, Yancey county, is responsible for their payment and should be compelled to pay them.

The complaint alleges, and the court finds the same to be true, that the said warrants or vouchers were issued by the board of road commissioners of Yancey county for the purpose of taking up and paying outstanding warrants for work, labor, and materials which had been given from time to time in settlement of claims and amounts due for work, labor, and materials furnished to the board of road commissioners of Yancey county to enable said board to construct roads in Yancey county as provided they should do in the act of the General Assembly of North Carolina at its session of 1913 (Pub. Loc. Laws 1913, c. 603), hereafter referred to.

In this connection the court might state that it is admitted that the county of Yancey received the benefit of the items making up the totals of the vouchers sued upon, and that the county of Yancey received the benefit of all the money evidenced by these notes or vouchers.

The complainant contends that the county of Yancey is responsible for the payment of these obligations, and that the county received full value therefor, and that the work, labor, and materials for which said obligations were created have been accepted and used by the county on its public roads and highways and in their construction, building, maintenance, and repair. On the other hand, the defendant contends that it is not responsible in any way for the debts or defaults of the board of road commissioners of Yancey county, because, it contends, the board of road commissioners was a body corporate created by the Legislature of North Carolina at its session of 1913, and that in the act creating this board the board was permitted to issue bonds not to exceed in amount the sum of $150,000. The defendant further contends that, when the vouchers sued on herein were issued by the board of road commissioners, the entire $150,000 bond issue had been realized upon and had been expended, and that any debts or obligations incurred by the board of road commissioners in excess of $150,000 were void and not collectable from the defendant, Yancey county.

The complainant also contends that the Legislature of North Carolina, at its session of 1907 (chapter 193), made it the duty of the county commissioners of Yancey county to levy a special tax every year thereafter of not less than 15 cents on property, and not less than 45 cents on the poll; and the taxes from these levies were to be set apart as a special road fund; and the complainant contends that after the creation by the Legislature of the board of road commissioners of Yancey county said county commissioners of Yancey county failed and refused to levy the special tax provided for in this act, and contends that this county, by its commissioners, should now be compelled to collect enough money by levies under said act to pay this complainant, because, the complainant contends, it was the duty of the county commissioners to levy this tax and turn over the proceeds to the board of road commissioners during the entire existence of said board of road commissioners. As to this contention, the defendant says that the act of the General

Assembly of 1913 creating the board of road commissioners of Yancey county repealed the act of 1907, and therefore the county commissioners of Yancey county were not required to levy the special tax mentioned in said act of 1907.

[5] In view of these contentions, it might be well to state briefly what these two acts of the Legislature now under consideration provided. As stated above, the act of 1907 made it the duty of the county commissioners to levy a special tax every year thereafter of not less than 15 cents on property and not less than 45 cents on the poll; the proceeds from said levy to be set apart as a special road fund.

The act of 1913 created one D. M. Buck and others a board of road commissioners of Yancey county. This board was constituted a body corporate and given all the power and authority granted to corporations of like nature by the laws of North Carolina, and was given power to sue and be sued, to make contracts, and such other powers as are necessary to carry out any and all the provisions of the act. The act made it the duty of the board to take charge of the working, repairing, and maintaining, altering, and construction of any and all roads of Yancey county at that time maintained by the county as public roads, and the board was vested with all the power, rights, and authority to be vested in the board of county commissioners of Yancey county for the general supervision of the roads of said county and the construction and repair thereof. The board was also authorized and empowered in its discretion to issue bonds of Yancey county for the construction and repair of more roads in said county, not to exceed the sum of $150,000. The bonds were to be coupon bonds of such denominations as the board saw fit to make them, to bear 6 per cent. interest, and to be styled "Yancey county good roads bonds." Same were to be payable and redeemable at some time, not to exceed 41 years from time of issue, as the board might determine. A sinking fund to pay these bonds and interest was also provided for, and a special tax for such purpose. The board was also authorized to pay for and acquire tools, implements, teams, etc., and to condemn land, and also to employ labor and make contracts for any portion of any road under construction or repair.

In accordance with this act the board of road commissioners did issue a total of $150,000 of these bonds, but before doing so a suit was brought by the commissioners of Yancey county to prevent the issuance of the bonds, on the ground that the act creating the board of road commissioners was unconstitutional. The Supreme Court held the act constitutional (Commissioners v. Road Commissioners, 165 N. C. 632, 81 S. E. 1001), and the board of road commissioners proceeded to build roads in Yancey county.

The Legislature at its session of 1917 (chapter 113) repealed the act creating the board of road commissioners of Yancey county, with no saving clause except to declare the $150,000 of bonds to be a valid debt.

Now the question is: Is the county of Yancey responsible for debts contracted by the board of road commissioners in excess of the $150,000 bond issue authorized? I am of opinion that the act of 1913 creating the board of road commissioners of Yancey county in its broad, comprehensive, and detailed terms repealed the act of 1907 (chapter 193),

county, were not required to levy a special tax to be turned over to the and therefore the commissioners of Yancey county, representing the board of road commissioners of Yancey county during the existence of said board of road commissioners.

It is a general principle of law that, when a later statute is enacted covering the entire ground of the subject-matter (in this case the construction and maintenance of roads in Yancey county), it supersedes and impliedly repeals the preceding statute. Upon reading the two acts very carefully, I cannot conclude that it was the purpose of the Legislature to keep in force the act of 1907 after creating the board of road commissioners of Yancey county in 1913, prescribing their duties and providing that they might issue bonds to an amount not exceeding $150,-000.

[2] Then, if Yancey county is not required to levy sufficient special taxes under the act of 1907 to pay the complainant in this cause, is the county liable generally under the act of 1913 or under any other act for the debts of the board of road commissioners? It has been pretty generally held, and definitely and particularly so held by the Supreme Court of North Carolina, that where a county or municipality is limited by the Legislature to the expenditure of a definite sum, in this case $150,000, any acts of such county or municipality creating a larger indebtedness are invalid. Burgin v. Smith, 151 N. C. 568, 66 S. E. 607; Highway Commissioners v. Webb, 152 N. C. 710, 68 S. E. 211.

The court in Burgin v. Smith, supra, says:

"The legislative department of the government has the power to control and govern the counties of the state as its creatures and political agencies, the conclusion is irresistible that in contracting a debt, even for a necessary expense, as the repairs of a courthouse, the Legislature has the power, if it choose to exercise it, to put a limitation upon the cost. The Legislature did, by the act (chapter 242, Laws 1901), limit the board of commissioners of McDowell county to $5,000 for the purposes of enlarging and improving the courthouse in McDowell county, and the commissioners had no power, in obeying the act of the Legislature, to exceed the limit prescribed for this expense."

The court in this opinion, at the same page, further says:

"Where the Legislature has interposed its will and plainly declared it, where it has by its act prescribed the limit of expenditure, even for a necessary expense for a county, it cannot, under the decisions of this court herein cited, be maintained that the commissioners can disregard and set at naught the legislative will by setting up a general power of contracting debts for necessary expenses, restrained only by the constitutional limitation of taxation."

The court continues:

"It is, however, suggested that the act under consideration limited the issue of bonds, and not the cost of the improvement of the courthouse, but this construction of the act is too narrow. It is manifest that it was contemplated that the proposed enlargement of the courthouse would not cost more than $5,000, and the Legislature placed this limit upon it, 'not exceeding the sum of $5,000,' and authorized the commissioners 'to issue coupon bonds or county script.'"

[3] I am therefore of opinion that Yancey county is not responsible for the debt created by the board of road commissioners in any event,

and particularly is it not responsible for debts created in excess of the $150,000 bond issue. However, it appeared from the oral testimony taken before me that during the life of the board of road commissioners this board had paid of its funds the sum of $11,958.75 in settlement of certain obligations which were really due and payable by the commissioners of Yancey county; in other words, the board of road commissioners advanced to the county of Yancey, through its commissioners, the sum of $11,958.75. After the abolition of the board of road commissioners, the commissioners of Yancey county evidently agreed that they held in trust a fund of $11,958.75 which belonged to the abolished board, and in consequence of this understanding the commissioners of Yancey county paid a number of claims, warrants, and vouchers held against the board of road commissioners, aggregating $7,999.23. These claims were paid, so far as the evidence shows, before the commissioners of Yancey county had any knowledge of the debt held by the complainant in this cause against the board of road commissioners. After paying the $7,999.23 referred to in the settlement of debts due by the board of road commissioners, there was still due from the commissioners of Yancey county to the board of road commissioners the sum of $3,959.52. While this amount was in the hands of the commissioners of Yancey county, they received notice of the claim sued on in this action, and after receiving notice of this claim the commissioners of Yancey county paid $4,433.43 for a bridge which had been purchased and built by the board of road commissioners.

[4] The court is of opinion that, after the commissioners of Yancey county received notice of the complainant's claim in this cause, the commissioners of the county had no right to apply the remaining sum in their hands, which was due to the board of road commissioners, to the payment of the debt of the bridge company, but the county commissioners should have prorated the sum of $3,959.52 between the bridge claimant and the complainant in this cause. The county commissioners holding a fund of that kind had no right to prefer one creditor of the old board above another. Therefore the court holds that, in accordance with this pro rata sharing, the county commissioners of Yancey county should have paid to the complainant in this cause the principal sum of $2.452; and the court would render judgment for this were it not for the last sentence of section 3 of an act entitled, "An act to amend the municipal finance act, and for other purposes relating to municipal and county finances," enacted by the Legislature of North Carolina at its special session on August 26, 1920 (chapter 3), and which act was shown the court after oral argument in this cause, viz.:

"All indebtedness now outstanding incurred by a county or municipality for necessary expenses is hereby validated, notwithstanding any want of power to incur indebtedness for the purpose for which such indebtedness was incurred, or any other defect or invalidity."

In view of this act of the General Assembly, and in view of the holding of the Supreme Court of North Carolina that building and repairing a county's public roads is a necessary expense, and in view of the admission of both sides to this controversy "that the county of Yancey got the benefit of the money sued for in this action," and it

being shown and admitted that said vouchers were issued for actual labor and materials furnished in the construction of Yancey county's public roads, the court holds that the Legislature of 1920 intended to. validate such claims as the one sued on herein, and did validate said claim, it being a debt contracted in behalf of Yancey county, and there is no denial that the county received full benefit of such contract.

Judgment is therefore rendered in favor of complainant for the principal sum of $7,219.24 with interest on $3,400 from the 26th day of October, 1917, at 6 per cent. per annum, and with interest on $3,-819.24 at the rate of 6 per cent. per annum from the 6th day of December, 1917. The court does not grant, at present, the complainant's demand for a mandatory injunction against the county commissioners requiring them to levy such tax as may be necessary to pay the above judgment, for the reason that it is the court's opinion that the county will do this, when its indebtedness is finally determined, without further compulsion.

Since writing the foregoing I have been furnished with a copy of an act of the General Assembly of North Carolina ratified January 14, 1921, which is as follows:

"Section 1. That chapter 3 of the Public Laws, Extra Session, 1920, be amended as follows: Insert a period in place of the comma after the word 'validated' in line 25 of section 3 on page 56, and strike out the remainder of said section.

"Sec. 2. This act shall be in force from and after its ratification."

This amendment, ratified on the 14th of January, 1921, simply strikes out of the above-quoted portion of the statute of August 26, 1920, the words "notwithstanding any want of power to incur indebtedness for the purpose for which such indebtedness was incurred, or any other defect or invalidity." This leaves the statute as passed by the Legislature of August, 1920, as follows:

"All indebtedness now outstanding, incurred by a county or municipality for necessary expenses, is hereby validated."

I cannot see that the amendment by the Legislature on January 14, 1921, has either changed the meaning or affected the substance of that portion of the act in question passed by the Legislature at its extra session in August, 1920. The act of 1920 now simply declares that "all indebtedness outstanding incurred by a county or municipality for necessary expenses is hereby validated," and that is the law now. The Legislature of 1921, when it amended this act on January 14, 1921, realized that the statute, left untouched, meant to ratify and validate all outstanding indebtedness of a county incurred for necessary expenses. It has been decided often by the Supreme Court of North Carolina that building roads and bridges by counties is a necessary expense. Indeed, the act of the Legislature of 1913 (chapter 603) which created the board of road commissioners of Yancey county was brought in question before the Supreme Court of North Carolina, and that court decided (165 N. C. 632, 81 S. E. 1001) that the statute in question was constitutional, and that the pledging of the faith and credit of the county for public road purposes is valid, and that such purposes were for

necessary expenses of the county. So, with the Legislature of 1920 declaring that all indebtedness then outstanding incurred by a county for necessary expenses is valid, and with the Supreme Court declaring that the building of roads and bridges as set forth in the act of 1913 (chapter 603) is a necessary county expense, I am of opinion that the act of the Legislature of January 14, 1921, did not change the status of the case, and that the judgment should be as above set forth. Indeed, there is much authority to the effect that, even though the Legislature of 1921 has repealed all of section 3 of the act of 1920, the judgment above recorded would not have been affected, for the reason that, when the Legislature validates an outstanding claim against a county or municipality, a subsequent Legislature cannot invalidate it. However, it is not necessary to pass on this question in the present case, as I hold, as above stated, that the amending act of January 14, 1921, does not repeal or affect the validating portion of section 3 of the act of August, 1920. So the judgment of the court is that the plaintiff have and recover of the defendant the principal sum of $7,219.24, with interest on the two separate items as above set forth.

This cause will be retained for further orders.